UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WILLIAM D. COLEMAN

VERSUS

ANCO INSULATIONS, INC. ET AL.

CIVIL ACTION

NO. 15-821-BAJ-EWD

**RULING AND ORDER**

Before the court is a Motion for Destructive Testing[1] filed by defendant Pilkington North America, Inc. (f/k/a Libbey Owens Ford) ("PNA"). Although Plaintiffs indicated opposition to the Motion for Destructive Testing during an in-court conference with the parties on March 29, 2017, Plaintiffs have not filed an opposition to the Motion.[2] Accordingly, the court considers the Motion for Destructive Testing to be unopposed.[3] For the reasons set forth herein, the court **GRANTS** the Motion for Destructive Testing.

**I.     Background**

Plaintiffs allege that William D. Coleman ("Decedent") died from malignant mesothelioma on November 8, 2016 "due to or a [sic] consequence of his exposure to dust and fibers from asbestos and asbestos-containing materials utilized by" PNA.[4] On March 17, 2017, PNA filed the instant Motion for Destructive Testing, seeking an order allowing it to proceed with destructive testing of Decedent's pathology materials. Specifically, PNA seeks "to use a small portion of Decedent's tissue" for a "fiber burden analysis" that PNA contends will provide objective evidence

---

[1] R. Doc. 79.

[2] During the March 29, 2017 status conference, the undersigned instructed Plaintiff to file any opposition to the Motion for Destructive Testing within the usual deadline of twenty-one days, or by April 7, 2017. R. Doc. 88.

[3] *See*, LR 7(f) ("Each respondent opposing a motion shall file a response…within twenty-one days after service of the motion."); *MCR Marketing, LLC v. Regency Worldwide Services, LLC*, 2010 WL 743011, at * 1 (W.D. La. March 1, 2010) ("No opposition has been received, and therefore the court will consider the motion for default judgment unopposed.").

[4] R. Doc. 93, ¶ 1.

1

"of whether or not there are asbestos fibers in decedent's pathological tissue."[5] PNA explains that "[i]f the tissue is large enough and well preserved, it can be 'digested' in a manner that eliminates the tissue and leaves behind any inorganic particles and minerals. By using this methodology, a person can identify objective evidence of exposure to biopersistent materials like asbestos."[6] PNA therefore seeks an order from this court granting the Motion for Destructive Testing and ordering as follows:

> 1. The pathology to be released is described as: All pathology material (including, but not limited to: accession/specimen ##: S15-32945, OC-15-12125, C-15-214324, C-15-214326, S-15-053034, S-15-091159), including but not limited to slides, tissues, stains and blocks, and associated reports, of WILLIAM COLEMAN, XXX-XX-8396;
>
> 2. PNA's expert shall not use more than 50% of said pathology material;
>
> 3. The results of PNA's expert's destructive analysis will be provided to plaintiffs no later than ninety (90) days from date of service of said materials to PNA.[7]

## II. Law and Analysis

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

---

[5] R. Doc. 79-1.

[6] R. Doc. 79-1, p. 3.

[7] R. Doc. 79.

"Generally, the scope of discovery is very broad, though it is not unlimited." *Heck v. Buhler*, 2015 WL 7432367, at * 2 (M.D. La. Nov. 23, 2015) (citing *Crosby v. Louisiana Health Serv. & Indent. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). *See also*, *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014) ("The general scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.' The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.") (internal citations omitted). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. The Rule specifically allows a party to serve "a request within the scope of "Rule 26(b)" to "inspect, copy, test, or sample" "any designated tangible things." Fed. R. Civ. P. 34(a)(1)(B). "Several courts have dealt with the issue of 'destructive testing' in relation to production of 'tangible things' within the parameters of Rule 34." *Bostic v. Ammar's Inc.*, 2011 WL 251009, at * 3 (E.D. Ky. Jan. 26, 2011). "'If the parties differ as to whether an inspection or test is appropriate, the court must balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection.'" *Galitski v. Samsung Telecommunications America, LLC*, 2014 WL 3610789, at * 7 (N.D. Tex. July 22, 2014) (quoting *Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408 (S.D.Tex. 2013) (quoting *Hunley v. Glencore Ltd.*, 2013 WL 1681836, at *3 (E.D. Tenn. April 17, 2013)). "However, the decision whether to allow testing, destructive and non-destructive testing alike, 'rests within the sound discretion of the court.'" *Id*. (quoting *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D.Minn.1988)).

In *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D.Minn.1988), the court noted that "[p]roduction for purposes of destructive testing falls within" Fed. R. Civ. P. 34 and explained that "[t]he court is required to balance the interests to be served by destructive testing against the value of preservation of the evidence on behalf of the opposing party." Other courts considering the issue of destructive testing have found four factors relevant to their analysis: "1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." *Bostic v. Ammar's Inc.*, 2011 WL 251009, at * 3 (E.D. Ky. Jan. 26, 2011) (quoting *Mirchandani v. Home Depot, USA, Inc.*, 235 FRD 611, 614 (D. Md. 2006)).

Although the instant Motion for Destructive Testing is unopposed, the undersigned nevertheless has considered the interests of the parties, the relevance and reasonableness of the proposed testing, and whether other parties to these proceedings will be prejudiced by the proposed destructive testing. As proposed by PNA, the destructive testing will use no more than 50% of Decedent's pathology materials and PNA shall provide the results of said testing to Plaintiffs. No party has asserted that PNA's proposed testing would hinder their ability to present evidence at trial, nor has any party suggested less prejudicial alternatives. Further, the undersigned finds that PNA has established the relevancy of the proposed fiber burden analysis.[8] Especially in light of

---

[8] During the March 29, 2017 status conference, the court noted that to the extent Plaintiff objected to the Motion for Destructive Testing based on an argument that such testing would yield unreliable or unpersuasive results, it would seem more appropriate for such an argument to be the subject of a *Daubert* Motion or a Motion in Limine. R. Doc. 88, pp. 2-3. *See also*, *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 420 (D.Minn.1988) (rejecting plaintiffs' argument that the proposed destructive testing was not scientifically valid and therefore irrelevant and explaining "[w]hen experts disagree on the relevancy of certain evidence, it would be unjust to select the view of one of those experts with the result that another party's discovery is thereby barred. It is premature during the discovery stage to

the fact that PNA's proposal will not destroy all of the pathology materials and PNA's expert will provide the results of the analysis to Plaintiffs, the undersigned finds that such testing should proceed pursuant to Fed. R. Civ. P. 34.[9]

III. Conclusion

For the reasons set forth herein, the court **GRANTS** the Motion for Destructive Testing[10] filed by defendant Pilkington North America, Inc. (f/k/a Libbey Owens Ford) ("PNA").

**IT IS ORDERED** that the pathology materials of William Coleman, XXX-XX-8396, including slides, tissues, stains and blocks, and associated reports of William Coleman, XXX-XX-8396 (including but not limited to: accession/specimen ##: S15-32945, OC-15-12125, C-15-

---

make was is essentially an evidentiary ruling. Once the testing is completed, plaintiffs will be free to make an appropriate motion in limine or evidentiary motion."); *Mirchandani v. Home Depot, USA, Inc.*, 235 FRD 611, 615 (D. Md. 2006) ("The fact that defendants' experts do not believe that the proposed destructive testing will enable plaintiffs to prove their case is irrelevant at this stage of the litigation.").

[9] Fed. R. Civ. P. 35 provides that "[t]he court where the action is pending may order a party whose mental or physical condition…is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "The Court uses a two-part test to determine whether a Rule 35(a) motion will be granted. First, the moving party must show that the physical or mental state of the party to be examined must be in controversy. Second, the moving party must show good cause as to why the motion should be granted." *Howell v. Hillcorp Energy Co.*, 2013 WL 1455758, at * 2 (E.D. La. April 9, 2013) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964)). "Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119. The Louisiana Supreme Court has distinguished testing of tissue samples from independent medical examinations that, under state procedural rules (like Fed. R. Civ. P. 35), may only be ordered on motion for good cause. *Estate of Patrick v. Board of Sup'rs, Louisiana State University*, 836 So. 2d 1, 2 (La. 2002) ("the lower courts erred in utilizing the test for allowing an independent medical examination (IME) to determine whether to allow further testing of the tissue. One cannot analogize testing of the tissue in this case with an IME of a living person or with the performance of an autopsy, both of which are intrusive procedures performed on the human body. Examination of tissue preserved more than eight years ago does not differ from examination of any inanimate substance for the purpose of discovery. Therefore, the heightened test, 'for good cause shown,' of LSA-C.C.P. art. 1464 does not apply."). However, at least one district court in this state has found a "pathologist's or other expert's examination of tissue samples taken from the body of a person who is now deceased" to be "sufficiently analogous to an examination under Rule 35(b) so that all parties have a right to the type of information set forth in that rule." *Coates v. AC & S, Inc.*, 133 FRD 109, 110 (E.D. La. 1990). To the extent a showing that the physical state of Decedent is in controversy and there is good cause for the proposed testing, the undersigned finds that the nature of the pleadings here – which allege Decedent's death due to exposure of asbestos – put Decedent's physical condition, particularly the presence of asbestos fibers in Decedent's body, at issue and that there is good cause to allow such testing.

[10] R. Doc. 79.

214324, C-15-214326, S-15-053034, S-15-091159) (the "Pathology Materials"), shall be released to PNA's expert for destructive testing described as a "fiber burden analysis" and "tissue digestion."

**IT IS FURTHER ORDERED** that PNA's expert shall use no more than 50% of the Pathology Materials and that PNA shall provide the results of PNA's expert's destructive analysis to Plaintiffs no later than ninety (90) days from the date of service of said materials to PNA.

Signed in Baton Rouge, Louisiana, on April 25, 2017.

                                      **ERIN WILDER-DOOMES**
                                      **UNITED STATES MAGISTRATE JUDGE**