UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WILLIAM D. COLEMAN

VERSUS

ANCO INSULATIONS, INC. ET AL.

CIVIL ACTION

NO. 15-821-BAJ-EWD

**RULING AND ORDER**

Before the court is a Motion to Compel Defendant Pilkington North America, Inc. ("PNA") to Produce a Corporate Representative Pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Motion to Compel")[1] filed by Plaintiffs, Pamela Coleman and Jody Coleman Nolte ("Plaintiffs").[2] By their Motion to Compel, Plaintiffs seek to compel PNA to produce a corporate representative to testify regarding certain topics. PNA has filed an Opposition.[3]

For the reasons set forth herein, Plaintiffs' Motion to Compel is GRANTED IN PART and DENIED IN PART. Specifically,

The court GRANTS Plaintiffs' Motion to Compel with respect to topic number 52. The court GRANTS Plaintiffs' Motion to Compel with respect to topic number 40 only to the extent this topics seeks information prior to 1972. The court DENIES Plaintiffs' Motion to Compel with respect to topic numbers 12, 22, 32, 37, 38, 15, 25, and 35. The court DENIES Plaintiffs' Motion to Compel with respect to topic numbers 13, 17, 21, 23, 27, 14, 24, 34, 16, 26, 36, 18, 19, 20, and 45 to the extent these topics seek information for the time period following Decedent's

---

[1] R. Doc. 81.

[2] On April 21, 2017, the court granted Plaintiffs' Second Revised Joint Rule 25(a)(1) Motion for Substitution of Parties Plaintiff and Motion for Leave to File Plaintiffs' First Supplemental and Amended Complaint (the "Motion to Substitute and Amend") by which Pamela Coleman and Jody Coleman Nolte sought to be substituted in William D. Coleman's stead as plaintiffs. R. Doc. 92.

[3] R. Doc. 89.

1

employment at the Shreveport plant. The court GRANTS Plaintiffs' Motion to Compel with respect to topic number 52.

I.   Background

Plaintiffs assert that William D. Coleman ("Decedent") was diagnosed with malignant mesothelioma on or around June 20, 2015 and died on November 8, 2016[4] "due to or a [sic] consequence of his exposure to dust and fibers from asbestos and asbestos-containing materials utilized by" PNA.[5] Per Plaintiffs' First Supplemental and Amended Complaint, Plaintiffs contend that at the time of Decedent's birth in 1941, his father, W.C. Coleman "was employed in the Packing Department at the Libbey-Owens-Ford ("LOF") Plant located in Shreveport, Louisiana."[6] Plaintiffs assert that W.C. Coleman was exposed to injurious levels of asbestos during his employment and that Decedent "experienced household exposure to asbestos from, *inter alia*, the skin and clothing of his father."[7] In addition to allegations of household exposure, Plaintiffs allege that "[i]n approximately 1962" Decedent "joined his father at the LOF Plant in Shreveport, Louisiana and he worked throughout the LOF Plant until approximately September of 1971 when the plant was closed."[8] Plaintiffs contend that as a result of Decedent's work at the LOF Plant, he "experienced direct exposure to injurious levels of asbestos from the asbestos containing products utilized therein. Specifically, [Decedent] was exposed to, *inter alia*, asbestos containing insulation; asbestos containing fire brick; asbestos containing discs; and 'sheets' of asbestos insulation."[9]

---

[4] R. Doc. 93, ¶ 13.
[5] R. Doc. 93, ¶ 1.
[6] R. Doc. 93, ¶ 7.
[7] R. Doc. 93, ¶ 8.
[8] R. Doc. 93, ¶ 9.
[9] R. Doc. 93, ¶ 9.

Plaintiffs allege that PNA proximately caused Decedent's mesothelioma and assert PNA "[i]nduc[ed] Decedent and his father to work in areas polluted with respirable asbestos fibers" and failed to: (1) provide safety equipment (such as respiratory protection and clothing) for Decedent and his father; (2) institute adequate safety measures and protection ("including wet methods, against deadly and life-threatening asbestos dust"); (3) adequately warn Decedent and his father regarding the dangers of asbestos contamination; (4) maintain safe "ambient and environmental conditions;" (5) remove or abate asbestos in the facility "during the time Decedent and his father were working there;" (6) provide adequate ventilation to ensure individuals were not exposed to asbestos; (7) provide a safe method for use of asbestos and asbestos-containing products and machinery/equipment; (8) adhere to industry safety standards; (9) provide "local exhaust in Decedent and his father's work areas;" (10) "monitor the air for airborne asbestos fibers in Decedent and his father's work areas;" (11) provide "proper medical monitoring while Decedent and his father were employed and working at [PNA's] premise;" (12) educate Decedent and his father regarding the hazards of asbestos; (13) post warning or caution signs regarding the hazards of asbestos; and (14) implement the use of asbestos-free materials.[10]

Additionally, Plaintiffs contend that defendants (*i.e.*, PNA and its alleged insurers) knew "for many decades" of the dangers posed by inhalation of asbestos dust and fibers but withheld and concealed such information; "released, published and disseminated" incorrect or otherwise misleading information; "distorted the results of medical examinations conducted on Decedent as well as workers and family members such as Decedent;" and contrived through trade organizations to "induce the Decedent to rely upon said false and fraudulent representations, omissions, and concealments, to continue to expose herself [sic] to the dangers inherent in the use of and exposure

---
[10] R. Doc. 93, ¶ 21(a)-(o).

to Defendants' asbestos-containing products and machinery…."[11] Plaintiffs allege that as "a direct and proximate result of Decedent's reliance on Defendants' false and fraudulent representations, omissions, and concealments, Decedent sustained damages including injuries, illnesses, and disabilities and has been deprived of the opportunity of informed free choice in connection with the exposure to Defendants' asbestos-containing products and machinery requiring or calling for the use of asbestos and asbestos-containing products."[12]

**II.     Law and Analysis**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Generally, the scope of discovery is very broad, though it is not unlimited." *Heck v. Buhler*, 2015 WL 7432367, at * 2 (M.D. La. Nov. 23, 2015) (citing *Crosby v. Louisiana Health Serv. & Indent. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)).  *See also*, *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014) ("The general scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'  The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.") (internal citations omitted).  "It is

---

[11] R. Doc. 93, ¶ 25(a)-(f).

[12] R. Doc. 93, ¶ 27.

4

well established that the scope of discovery is within the sound discretion of the trial court." *Southern Filter Media, LLC v. Halter*, 2014 WL 4278788, at * 3 (M.D. La. Aug. 29, 2014). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 30(b)(6) of the Federal Rules of Civil Procedure governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous." *Krantz v. State Farm Fire and Casualty Co.*, 2016 WL 320148, at * 3 (M.D. La. Jan. 25, 2016) (citing *Scioneaux v. Elevating Boats, LLC*, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, 1999 WL 30966 (E.D. La. Jan. 21,1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized)).

Per the instant Motion to Compel, Plaintiffs seek to compel a corporate representative of PNA to testify regarding the following topics:

> 12. Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF on a corporate level regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 13. Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 14. LOF's Worker's Compensation for occupational diseases. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 15. Discussions, either written or verbal, between LOF and its insurance carriers regarding LOF's plant conditions.
>
> 16. Discussion, either written or verbal, between LOF and its insurance carriers regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 17. Warnings issued to LOF plant management from LOF's corporate level management regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 18. The organizational structure of PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 19. Any corporate level safety program at PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 20. Any corporate level industrial hygiene program at PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 21. Any corporate level research program at PNA designed to analyze the use of asbestos, asbestos containing products, and/or asbestos containing equipment in the manufacture of glass at former LOF plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

22. Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by PNA on a corporate level regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

23. Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by PNA on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

24. PNA's Worker's Compensation for occupational diseases. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

25. Discussions, either written or verbal, between PNA and its insurance carriers or any other person or entity regarding LOF's plant conditions. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

26. Discussion, either written or verbal, between LOF and its insurance carriers or any other person or entity regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.[13]

27. Warnings issued by PNA to former LOF employees regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

32. Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF in Shreveport, Louisiana regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

34. To the extent handled on a plant level, Worker's Compensation for occupational diseases at LOF in Shreveport, Louisiana. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

35. To the extent handled on a plant level, discussions, either written or verbal, between LOF in Shreveport, Louisiana and its insurance carriers or any other person or entity regarding the Shreveport plant's conditions. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

---

[13] As this topic is almost a verbatim repeat of topic number 16, the undersigned assumes that this topic was intended to seek discussions between PNA and its insurance carriers regarding asbestos in LOF's plants.

7

> 36. To the extent handled on a plant level, discussion, either written or verbal, between LOF in Shreveport, Louisiana and its insurance carriers or any other person or entity regarding asbestos in the Shreveport plant. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 37. Any studies of air conditions at the LOF plant in Shreveport, Louisiana, including but not limited to air monitoring studies, from 1945 through 1972. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 38. Any verbal, written, or otherwise published warnings regarding the hazards of excessive dust at the LOF plant in Shreveport, Louisiana from 1945 through 1972. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 40. Any environmental or industrial hygiene studies of the Shreveport plant conducted at any time. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 45. LOF and PNA membership in and/or affiliation with any trade organizations. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> 52. LOF and PNA's relationship to Aeroquip-Vickers, Inc. at 1111 Superior Avenue, Cleveland Ohio. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

In opposition to the Motion to Compel, PNA asserts that Plaintiffs' requested deposition topics are vague, irrelevant, and burdensome.[14] Specifically, PNA asserts that while it "is prepared to present a representative to discuss the use of the only potentially injury-causing agent at issue in this action – asbestos – in the only time period relevant to this case – during the employment of

---

[14] PNA also objects to the Motion to Compel because "[a]s of the date of [its] opposition, PNA has never received a notice of deposition stating a time and place for the deposition of PNA's corporate representative which would trigger any legal obligation on the part of PNA." R. Doc. 89, p. 2. Formal service notwithstanding, PNA "agrees that it has engaged in discussions with plaintiff's counsel regarding a corporate representative deposition, and that these discussions were done as a professional courtesy by the plaintiff, and so that the parties could coordinate calendars." R. Doc. 89, p. 2. Further, PNA states that it "is prepared to present a representative to discuss" asbestos at the Shreveport plant during the periods of Decedent's and his father's employment. R. Doc. 89, p. 1. Given PNA's assertion that it is prepared to produce a corporate representative, and the parties' briefing that indicates that such corporate deposition will move forward following a determination by the undersigned regarding its scope, the undersigned proceeds with an analysis of the substantive issues raised in the Motion to Compel and PNA's opposition thereto.

William Coleman and his father at PNA's plant. PNA cannot and is not required to prepare a representative on a topic as vague and ambiguous as 'dust,' and is not required to prepare a representative on decades of corporate history post-dating the termination of Mr. William Dale Coleman's employment."[15]

### a. Topics Seeking Information Regarding "Excessive Dust" or General Plant Conditions

PNA argues that "in an asbestos personal injury action the relevant toxin is asbestos"[16] and asserts that while it "is willing to have a corporate representative testify regarding its knowledge of asbestos hazards" it is "not willing to testify about vaguely stated 'dust' hazards that are irrelevant to the facts and law in this action."[17] The court considers the following topics to seek corporate testimony regarding unspecified dust or general environmental conditions:

> Number 12: Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF on a corporate level regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 22: Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by PNA on a corporate level regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 32: Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF in Shreveport, Louisiana regarding the hazards of excessive dust. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 37: Any studies of air conditions at the LOF plant in Shreveport, Louisiana, including but not limited to air monitoring

---

[15] R. Doc. 89, p. 1.

[16] R. Doc. 89, p. 4.

[17] R. Doc. 89, p. 6.

> studies, from 1945 through 1972. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 38: Any verbal, written, or otherwise published warnings regarding the hazards of excessive dust at the LOF plant in Shreveport, Louisiana from 1945 through 1972. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 40: Any environmental or industrial hygiene studies of the Shreveport plant conducted at any time. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 15: Discussions, either written or verbal, between LOF and its insurance carriers regarding LOF's plant conditions.
>
> Number 25: Discussions, either written or verbal, between PNA and its insurance carriers or any other person or entity regarding LOF's plant conditions. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 35: To the extent handled on a plant level, discussions, either written or verbal, between LOF in Shreveport, Louisiana and its insurance carriers or any other person or entity regarding the Shreveport plant's conditions. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Plaintiffs assert that "PNA's knowledge regarding the hazards of general nuisance dust and its over-arching approach to industrial hygiene is relevant regarding whether it was foreseeable to PNA that Mr. Coleman could be injured by asbestos dust."[18] Because Plaintiffs have alleged a household exposure claim based on Decedent's contact with his father's clothing, the undersigned finds that PNA's industrial hygiene practices are relevant to Plaintiffs' claims and that topic number 40 could lead to such relevant information. Accordingly, the court GRANTS Plaintiffs' Motion to Compel with respect to Number 40.[19] However, as discussed herein, Plaintiffs have not established that their requests seeking corporate testimony regarding "excessive dust" unrelated to

---

[18] R. Doc. 81-1, p. 6.

[19] However, as discussed in the following section, this topic is limited to information prior to 1972.

10

asbestos seek relevant information that would not otherwise be captured via Plaintiffs' more specific requests regarding asbestos or that such generalized requests are proportional to the needs of the case at this juncture.

Plaintiffs assert that *Roberts v. Owens-Corning Fiberglas Corp.*, 878 So.2d 631 (La. App. 1 Cir. 2004) "is instructive regarding the scope of duty/scope of risk analysis utilized to assess foreseeability in asbestos cases such as the instant matter"[20] and argue that the *Roberts* court considered evidence such as a report entitled "Dust Producing Operations" and a "Report on 'Summary' of the Plant Industrial Hygiene Problems." However, Plaintiffs also recognize that these materials specifically addressed, *inter alia*, asbestos.[21] Plaintiffs have provided no support for their position that information regarding "nuisance dust" which does not address asbestos is relevant to Plaintiffs' claims that Decedent was exposed to asbestos and that PNA knew or should have known that such exposure could be hazardous. PNA correctly points out that Louisiana courts require a claimant to show exposure to the product complained of. *See*, *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1089 (La. 2009) ("To prevail in an asbestos case a plaintiff must show, by a preponderance of the evidence, he was exposed to asbestos and he received an injury substantially caused by that exposure."); *Roberts*, 878 So. 2d at 642 ("But our courts have, as a matter of policy, required that 'the claimant must show that he had a significant exposure to the product complained of to the extent it was a substantial factor in bringing about injury.'") (citing *Asbestos v. Bordelon*, 726 So.2d 926, 948 (La. App. 4 Cir. 1998)).

---

[20] R. Doc. 81-1, p. 6.

[21] *See*, R. Doc. 81-1, pp. 6-7 (noting that the "Dust Producing Operations" report "while not limited to asbestos, did discuss asbestos particles" and that the "Report on 'Summary'" "although not limited to asbestos…did discuss asbestos issues.").

Significantly, Plaintiffs have set forth similar topics seeking corporate representative testimony specifically regarding knowledge, literature, warnings, research, and discussions related to the hazards of asbestos[22] such that Plaintiffs' more general topics appear to be cumulative. To the extent the court would have otherwise considered limiting topic numbers 12, 22, 32, 37, 38, 15, 25, and 35 regarding dust or plant conditions generally to information related to asbestos, such limitation has already been imposed via Plaintiffs' proposed topics 13, 21, 23, 27, 26, and 36. At this juncture of these proceedings, especially considering that any relevant information that would otherwise be captured via their more generalized requests will also likely to be captured by Plaintiffs' more specific topics addressing asbestos, Plaintiffs have not established that compelling corporate representative testimony regarding topic numbers 12, 22, 32, 37, 38, 15, 25, and 35 would be proportional to the needs of this case. Accordingly, the undersigned GRANTS Plaintiffs' Motion to Compel with respect to topic number 40 (as temporally limited per the discussion below) and DENIES Plaintiffs' Motion to Compel with respect to topic numbers 12, 22, 32, 37, 38, 15, 25, and 35.

---

[22] *See*, Number 13 ("Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 17 ("Warnings issued to LOF plant management from LOF's corporate level management regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 21 ("Any corporate level research program at PNA designed to analyze the use of asbestos, asbestos containing products, and/or asbestos containing equipment in the manufacture of glass at former LOF plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 23 ("Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by PNA on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 27 ("Warnings issued by PNA to former LOF employees regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 16 ("Discussion, either written or verbal, between LOF and its insurance carriers regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); Number 26 ("Discussion, either written or verbal, between LOF and its insurance carriers or any other person or entity regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic."); and Number 36 ("To the extent handled on a plant level, discussion, either written or verbal, between LOF in Shreveport, Louisiana and its insurance carriers or any other person or entity regarding asbestos in the Shreveport plant. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.").

### b. Topics Seeking Information Regarding Post-Employment Information

PNA has objected to requests for testimony regarding corporate knowledge or conduct post-dating 1971 (*i.e.*, the end of Decedent's employment) as irrelevant. PNA contends that the Louisiana Supreme Court has "recognized that all relevant activity in an asbestos action occur[s] before or immediately consequent with exposure" and that there is no continuing duty to warn former employees of the danger of asbestos exposure under Louisiana law.[23] PNA asserts that "[a] post-employment warning does not and cannot prevent anything, especially when the allegations are that asbestos exposure occurred during the employment"[24] and reasons that the exposures here "are alleged to have accrued during the employment. No knowledge after the employment terminated could have been causative of plaintiffs' alleged injuries."[25] The court considers the following topics to seek corporate testimony regarding, *inter alia*, the years after Decedent's employment:[26]

> Number 40: Any environmental or industrial hygiene studies of the Shreveport plant conducted at any time. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 13: Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by LOF on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 17: Warnings issued to LOF plant management from LOF's corporate level management regarding the hazards of asbestos.

---

[23] R. Doc. 89, p. 7.

[24] R. Doc. 89, p. 8.

[25] R. Doc. 89, p. 9.

[26] Because the court denies Plaintiffs' Motion to Compel with respect to topic numbers 12, 22, 32, 37, 38, 15, 25, and 35, the undersigned does not further consider whether such requests should also be limited to the time period of Decedent's and his father's employment. The undersigned further notes that Plaintiffs contend that topic numbers 13, 16, 17, 26, 36, and 45 are "specifically tailored to asbestos" and "do not involve an inquiry seeking post-1971 information" and therefore "do not suffer from any of Defendant's purported defects…." R. Doc. 81-1, p. 5. However, as the court reads these topics, they are not explicitly temporally limited and therefore the undersigned includes these topics in its analysis.

Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 21: Any corporate level research program at PNA designed to analyze the use of asbestos, asbestos containing products, and/or asbestos containing equipment in the manufacture of glass at former LOF plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 23: Scientific literature (i.e. case reports, plant studies, literature, editorials, etc.) maintained by PNA on a corporate level regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 27: Warnings issued by PNA to former LOF employees regarding the hazards of asbestos. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 14: LOF's Worker's Compensation for occupational diseases. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 24: PNA's Worker's Compensation for occupational diseases. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 34: To the extent handled on a plant level, Worker's Compensation for occupational diseases at LOF in Shreveport, Louisiana. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 16: Discussion, either written or verbal, between LOF and its insurance carriers regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 26: Discussion, either written or verbal, between LOF and its insurance carriers or any other person or entity regarding asbestos in LOF's plants. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Number 36: To the extent handled on a plant level, discussion, either written or verbal, between LOF in Shreveport, Louisiana and its insurance carriers or any other person or entity regarding asbestos in the Shreveport plant. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

> Number 18: The organizational structure of PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 19: Any corporate level safety program at PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 20: Any corporate level industrial hygiene program at PNA from 1972 through the present. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.
>
> Number 45: LOF and PNA membership in and/or affiliation with any trade organizations. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

In *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992), the Louisiana Supreme Court applied an "exposure theory" and held that insurance coverage in long-latency occupational disease cases "is triggered by the mere exposure to the harmful conditions during the policy period." The court explained that "unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous process – a slow development of this hidden disease over the years. Compounding the problem, asbestosis cases are characterized by a lengthy latency period – typically ranging a decade or two – and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury." *Id*. at 1065. The court determined that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous on-going damages, although the disease may not be considered contracted or manifested until later." *Id*. at 1066. Based on the Louisiana Supreme Court's reasoning set forth in *Cole*, the undersigned agrees that generally speaking, the relevant time period for Decedent's claims is during his (and his father's) employment at the Shreveport LOF plant because it was during that period of time Decedent was allegedly exposed to asbestos.

15

However, Plaintiffs contend that the time period following Decedent's employment (*i.e.*, 1972-present) is also relevant based on a "continuing duty to warn" and argues that post-employment information "may be relevant in establishing where asbestos was located in the Shreveport plant."[27] Plaintiffs provide no additional explanation regarding their need for post-employment information to establish the location of asbestos in the Shreveport plant, and, in light of the reasoning set forth in *Cole*, the undersigned cannot find, without more, that such post-employment information is relevant to the location(s) of asbestos in the Shreveport plant at the time Decedent was allegedly exposed.

With respect to the asserted continuing duty to warn, Plaintiffs rely on *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376 (La. 1990) and argue that "the Supreme Court of Louisiana expressly recognized a continuing duty to warn in a product liability case, albeit for a manufacturer. Given the unique position PNA held as Mr. Coleman's employer, as well as that of his father, it logically follows that PNA had an equally compelling duty to warn of any hazards later identified in the Shreveport plant to which the Colemans were subject."[28] In *Bunge*, plaintiff alleged that the manufacturer of a grain storage tank learned that the tank could rupture or fail under certain conditions after it built the tank but failed to warn plaintiff of the potential for tank failure. Plaintiff contended that had it known of the propensity for such failure, it could have acted to prevent the tank from rupturing. In considering whether the manufacturer defendant had a

---

[27] R. Doc. 81-1, p. 7.

[28] R. Doc. 81-1, p. 8. PNA argues that "Louisiana law recognizes a post-sale duty to warn only for product *manufacturers*" and that La. R.S. 9:2800.57 applies, by its own terms, only to manufacturers. R. Doc. 89, p. 7. La. R.S. 9:2800.57(C) provides that "[a] manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." The undersigned agrees that this provision applies only to "manufacturers;" however, the court does not read *Bunge* as foreclosing a possible continuing duty to warn in other contexts.

continuing duty to warn, the *Bunge* court noted that "persons are liable for acts of commission and omission that cause damage to another if a duty imposed by the relationship of the parties is breached by such act or omission." *Id*. at 1382 (citing *Dornak v. Lafayette General Hospital*, 399 So. 2d 168, 170 (La. 1981) (holding that prospective employer, once having undertaken to give pre-employment physical examinations, had a duty to disclose a tubercular condition discovered during the exam)). The court explained that "Louisiana law imposes a duty on a manufacturer to provide warning of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user" and that "the duty to warn, where it exists, is a continuing one." *Id*. at 1384.

In Plaintiffs' First Supplemental and Amended Complaint, Plaintiffs assert that "the Employer Defendants were negligent, and intentionally committed certain acts and omissions which created conditions at the workplace which were a proximate cause of Decedent's mesothelioma resulting from exposure to asbestos."[29] In particular, Plaintiffs allege, *inter alia*, that defendants' "[f]ailure to adequately warn Decedent and his father of the inherent dangers of asbestos contamination" and "[f]ailure to educate Decedent and his father of the hazards of asbestos" were proximate causes of Decedent's mesothelioma.[30] Plaintiffs further allege that "[a]s the direct and proximate result of the false and fraudulent representations, omissions, and concealments…Defendants…intended to induce the Decedent to rely upon said false and fraudulent representations, omissions, and concealments, to continue to expose herself [sic] to the dangers inherent in the use of and exposure to Defendants' asbestos-containing products…."[31]

---

[29] R. Doc. 93, ¶ 20.

[30] R. Doc. 93, ¶ 21(c) & (l).

[31] R. Doc. 93, ¶ 25(f).

17

As the undersigned reads Plaintiffs' Complaint, Plaintiffs' allegations regarding the failure to warn and/or educate Decedent are focused on the time period during which Decedent was allegedly exposed to asbestos (*i.e.*, Plaintiffs allege that PNA's acts and omissions "created conditions at the workplace" that were a proximate cause of Decedent's mesothelioma and that defendants induced Decedent "to continue to expose" himself to asbestos). Moreover, and in contrast to *Bunge*, Plaintiffs have not argued that post-employment information regarding the hazards of asbestos would have prevented Decedent's mesothelioma or led Decedent to otherwise prevent his damages and, given the relevant time frame for tortious exposure to asbestos discussed in *Cole*, the undersigned struggles to understand the relevancy of the post-employment information Plaintiffs seek. Accordingly, the court DENIES Plaintiffs' Motion to Compel with respect to topic numbers 40, 13, 17, 21, 23, 27, 14, 24, 34, 16, 26, 36, 18, 19, 20, and 45 to the extent these topics seek information after Decedent's employment at the Shreveport plant was terminated.[32]

### c. Information Regarding Aeroquip-Vickers, Inc.

Finally, Plaintiffs seek to compel a corporate representative to testify regarding topic number 52:

> LOF and PNA's relationship to Aeroquip-Vickers, Inc. at 1111 Superior Avenue, Cleveland Ohio. Please provide all documents reviewed, relied upon, and/or prepared regarding this topic.

Plaintiffs note in their memorandum that "Aeroquip-Vickers, Inc. appears in Mr. Coleman's social security records as his employer during the time frame at issue. Although PNA's Counsel has represented they do not dispute Mr. Coleman was employed at LOF's Shreveport plant, not [sic]

---

[32] To the extent these topics seek information regarding the time period during which Decedent and/or his father was employed at the Shreveport plant (*i.e.*, prior to 1972), as noted above, PNA has stated that it is prepared to present a representative regarding that time period. R. Doc. 89, p. 1. The court only denies Plaintiffs' Motion to Compel with respect to topic numbers 40, 13, 17, 21, 23, 27, 14, 24, 34, 16, 26, 36, 18, 19, 20, and 45 to the extent these topics seek information from 1972 through the present.

formal stipulation has been made to this effect and it is incumbent on Plaintiffs to diligently discover the nature of this relationship lest an issue arise at trial over the identity and, therefore, liability of Mr. Coleman's employer (or successor thereto)."[33] PNA does not specifically address topic number 52 in opposition to the Motion to Compel, and it does not appear to the undersigned that this topic is related to PNA's objections regarding excessive dust or post-employment information. Accordingly, the court GRANTS Plaintiffs' Motion to Compel with respect to topic number 52.

### III. Conclusion

For the reasons set forth herein, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Compel Defendant Pilkington North America, Inc. ("PNA") to Produce a Corporate Representative Pursuant to Federal Rule of Civil Procedure 30(b)(6).[34] Specifically,

The court **GRANTS** Plaintiffs' Motion to Compel with respect to topic number 52. The court **GRANTS** Plaintiffs' Motion to Compel with respect to topic number 40 only to the extent this topics seeks information prior to 1972. The court **DENIES** Plaintiffs' Motion to Compel with respect to topic numbers 12, 22, 32, 37, 38, 15, 25, and 35. The court **DENIES** Plaintiffs' Motion to Compel with respect to topic numbers 13, 17, 21, 23, 27, 14, 24, 34, 16, 26, 36, 18, 19, 20, and 45 to the extent these topics seek information for the time period following Decedent's employment at the Shreveport plant. The court **GRANTS** Plaintiffs' Motion to Compel with respect to topic number 52.

Signed in Baton Rouge, Louisiana, on May 8, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] R. Doc. 81-1, p. 5, n. 9.
[34] R. Doc. 81.